261 S.E.2d 43 (1979)
44 N.C. App. 282
Kenneth W. WOODARD and Mildred Woodard, d/b/a Woodard Electric Service Company
v.
NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY.
No. 7930SC257.
Court of Appeals of North Carolina.
December 18, 1979.
Certiorari Denied March 5, 1980.
*45 Van Winkle, Buck, Wall, Starnes & Davis, P. A. by O. E. Starnes, Jr., Asheville, for plaintiffs-appellees.
Morris, Golding, Blue & Phillips by William C. Morris, Jr., Asheville, for defendant-appellant.
Certiorari Denied by Supreme Court March 5, 1980.
WELLS, Judge.
Defendant argues on appeal that the trial court erred in failing to grant its motions for a directed verdict and for judge NOV. Defendant contends that these motions should have been granted because: (1) The Woodards, at trial, never proved their employee was negligent, and therefore the Woodards' liability to Kimsey and defendant's derivative liability to reimburse the Woodards was never established; and (2) as a matter of law, damage to Kimsey's building arose out of a "completed operations hazard" which was excluded from coverage under the terms of the insurance policy. We will deal with each of these arguments in the order stated above.
The insurance contract between the parties provided the following coverage:
1. COVERAGE CBODILY INJURY AND PROPERTY DAMAGE LIABILITY:
The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.
The policy limited action against the defendant as follows:
G. ACTION AGAINST COMPANY. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company.
* * * * * *
Under the foregoing provisions of the policy, defendant had the duty to defend the Georgia suit and the right to control settlement of the suit short of judgment. At the time the Woodards were confronted with the $25,000 settlement offer from Kimsey, the Woodards and defendant entered into an agreement dated 5 October 1977 in which the defendant waived its right to settle or refuse to settle the Georgia suit. Additionally, that agreement contained the following paragraphs:

*46 (2) It is further stipulated and agreed that in the event a future suit is instituted by the insureds against the insurer to judicially determine the question of whether or not North Carolina Farm Bureau Mutual Insurance Company has coverage of the loss sued for in the aforesaid Civil Action Number C 76-113 G, the insurer agrees that it will not plead or assert any defense to such suit based upon the fact that the insureds have not been adjudicated to be legally obligated to pay damages as provided in coverage C of the policy relating to bodily injury and property damage liability.
(3) Neither the insurer nor the insureds waive any rights which they now have or may have (except as expressly set forth in paragraphs (1) and (2) preceding), and the parties agree that the actions taken by the insureds as specified herein, and particularly the payment of the settlement proceeds, and the foregoing agreements of the insurer, have in no way prejudiced the rights, of either party, and said actions shall not be construed or contended to be an admission that no coverage is afforded under the policy or that coverage is afforded by the policy. Except as herein limited either party may assert any right or remedy or defense as it may deem appropriate. [Emphases added.]
Despite having agreed to relinquish its defense of and control over the Georgia suit, defendant now argues it is entitled to raise the same defense it explicitly waived in the agreement of 5 October 1977the Woodards' legal liability to Kimsey. In this regard defendant would have the Woodards prove the negligence of their employee, Brent Southard. While by its explicit terms the agreement between the parties preserved defendant's right to raise the defense of lack of policy coverage, the same agreement waived defendant's right to raise the issue of the Woodards' liability to Kimsey.
As to defendant's second argument, we hold that the evidence produced at trial failed to show that as a matter of law, the Georgia suit arose out of a "completed operations hazard" which was excluded from coverage in the policy issued by defendant. Under Section II of the policy:
* * * Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed.
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
Appellant strongly contends that these provisions of the policy operate to deny coverage under the circumstances surrounding the Woodards' claim. The fire loss which was the subject of the Georgia suit occurred in an egg plant operated by Kimsey. The Woodards' employee, Brent Southard, had been called to the Kimsey plant to repair a malfunctioning florescent light fixture. At trial, the Woodards offered the testimony of three employees who were present and working in the Kimsey egg plant on the day of the fire.
One of these witnesses, Robert Hunter, testified that he had worked in the Kimsey plant for about eight years and that on the day of the fire, he notified Kimsey that one of the florescent lights in the cooler room was not working. This employee stated *47 that he later observed Southard at work in the cooler room and that even before Southard left, he observed a wisp of smoke about the lights and smelled an odor of plastic in the area which he had not smelled before. Within two hours, the employee learned the building was on fire.
Another witness, Frances Hunnicutt, testified that she had worked in the Kimsey plant for eight or nine years and that on the morning of the fire she was working in the plant with Edith Edwards, another Kimsey employee. Hunnicutt stated that at about 10:00 or 10:30 A.M., she smelled something "hot", and at her lunch break she saw the light in question smoking and called Edith Edwards' attention to it. Hunnicutt testified that shortly thereafter, the light was on fire and fell onto a pallet of eggs which was also set ablaze. Edith Edwards corroborated Hunnicutt's testimony, although neither of these witnesses observed Southard's presence at the plant.
The following issue was tendered to the jury:
Was the work performed by [p]laintiffs' employee, Brent Southard, a "completed operations" as alleged in the [a]nswer?
The jury answered this issue in the negative.
Defendant argues that because the Woodards' evidence tends to show that Southard left the plant at about 10:00 or 10:15 A.M. and the fire was not observed until noon, the trial court should have found as a matter of law that the completed operations clause of the policy excluded coverage. Defendant maintains that the employee's work had been completed, since he left the plant with the lights working and at least an hour and a half had elapsed before the fire was observed. Defendant relies principally upon Daniel v. Casualty Co., 221 N.C. 75, 18 S.E.2d 819 (1942).
In Daniel, the insured plumbing company had contracted with a customer to convert a hot water heater into a heating stove. There was evidence to show that the plumbing company had agreed to fix the hot water heater so that it would be satisfactory in giving heat and be safe. In performing the job the plumber sealed the water jacket of the heater, but some water remained inside. About two months later, when a fire was lit in the heater, the heated water in the sealed water jacket turned to steam, expanded, and caused the heater to explode and injure the customer. The defendant insurance company raised the defense of a completed operations hazard.
In construing the definition of the term "complete" our Supreme Court stated:
We do not consider that the work is complete within the meaning of the insurance contract so long as the workman has omitted or altogether failed to perform some substantial requirement essential to its functioning, the performance of which the owner still has a contractual right to demand.
There is evidence here from which the jury might infer that by reason of the omission on the part of Alphin Plumbing and Heating Co. to do work essential to the functioning of the heater in the manner intended and called for in the contract, the work at the time plaintiff sustained her injury had never reached that condition of completeness that would render the restrictive clause in the policy operable.
221 N.C. at 77, 18 S.E.2d at 820. See in general, Annotation, "Construction and Application of Clause Excluding from Coverage of Liability Policy `Completed Operations Hazards,'" 58 A.L.R.3d 12 (1974); 7A Appleman, Insurance Law and Practice § 4497.06, pp. 150-155 (Berdal ed. 1979); 12 Couch, Insurance 2d § 44:435, pp. 20-21 (2nd ed. 1964).
Under the sound reasoning of our Supreme Court in Daniel, it appears to us in the case sub judice, that the Woodards' obligation to Kimsey was not "completed" until the light fixtures were put in a safe working condition. Even under the definition of "completed operations hazard" stated *48 in the policy, there was sufficient evidence to deny defendant's motion for a directed verdict. As mentioned previously, Edwards, Kimsey's employee, testified that he observed a wisp of smoke around one of the "repaired" light fixtures while Southard was still in the building. Since the trial court properly denied defendant's motion for a directed verdict, the court's denial of defendant's motion for judgment NOV must also be sustained. G.S. 1A-1, Rule 50; Insurance Co. v. Chantos, 298 N.C. 246, 258 S.E.2d 334 (1979).
Affirmed.
HEDRICK and ROBERT M. MARTIN, JJ., concur.